IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION<br>NO. 19-15-5 |
| STEPHEN WILKERSON | |

**PAPPERT, J.**                                                                                                 **July 20, 2022**

**MEMORANDUM**

Stephen Wilkerson seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] The Court denies his motion because extraordinary and compelling reasons do not warrant his release and, in any event, the factors under 18 U.S.C. § 3553(a) counsel against granting relief.

I

Wilkerson and his co-conspirators, operating in shifts, ran a drug delivery service that allowed customers to place orders for cocaine base (crack) and heroin via an around-the-clock phone number – the 4400 phone – much like a pizza delivery service. (Gov't Resp., ECF 538 at 1.) Wilkerson pleaded guilty to eight counts of using the 4400 phone to distribute controlled substances to customers in April and May 2016. (*Id.* at 2-4.) Conversations orchestrating the underlying drug sales were recorded on an authorized wiretap of the 4400 phone and laboratory and field tests confirmed the substances Wilkerson sold were crack and heroin. (*Id.* at 3.)

The Court sentenced Wilkerson to 120 months imprisonment and three years

---

[1] Wilkerson submitted a request for compassionate release to Fort Dix's warden in June 2021. (Def.'s Mot., ECF 534 at 2.) He says he did not receive a response (*id.*) and the BOP cannot find a record of one. (Gov't Resp., ECF 538 at 4.) The Government agrees that Wilkerson has satisfied the administrative exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) because more than 30 days elapsed between his request to the warden and his motion. (*Id.*)

supervised release.  (*Id.* at 4.)  Wilkerson has been incarcerated for around 51 months, first at FCI Fort Dix, and now at the Federal Prison Camp at USP Lewisburg.  (*Id.*; *see also* ECF 553 (noting change of address).)  With approximately 6 months of credit for good conduct, he has served roughly 57 months of his sentence.  (Gov't Resp., ECF 538 at 4.)

Wilkerson is 32 years old.  (Gov't Resp., ECF 538 at 5.)  The Government represents that he is in "good health."  (*Id.*)  He has no chronic disease, takes no prescription medications, is fully ambulatory and engages in all normal activities of daily living.  (*Id.*)  He received two doses of the Pfizer COVID-19 vaccine in August 2021.  (*Id.*)

He requests compassionate release because life in prison with COVID-19 restrictions in place is "much more harsh than it use[d] to be pre-pandemic," becoming akin to "solitary confinement."  (Def.'s Mot., ECF 534 at 3.)  He explains that "opportunities for rehabilitation have drastically declined almost to the point of [being] non-existent."  (*Id.*)  Although he cites no specific personal medical concern, he complains that attention to medical needs has been severely limited.  (*Id.*)  He also complains that inmate recreation is limited to two to three hours a week of walking outside around a track.  (*Id.*)

Wilkerson also wants to be released so he can "help alleviate the troubles" his mother faces due to health issues and her risk of catching COVID-19.  (*Id.* at 3.)  She had a stroke in 2020, "recently" was in a diabetic coma, "has undergone amputations and currently needs rehab."  (*Id.* at 2.)  He does not say whether she has received a COVID-19 vaccine.  He claims he will be her "primary caregiver," but his motion includes no information about who is caring for her now or the status of any other

2

available caregivers. (*Id.*) In his reply, Wilkerson explains other family members are involved in helping his mother, but their "lives are very busy and they can't often provide the assistance she needs." (Def.'s Reply, ECF 548 at 2.)

In addition, Wilkerson contends compassionate release will allow him to better parent his eleven-year-old son. (Def.'s Mot., ECF 534 at 2.) He asserts that school and life have become difficult for his son since his incarceration. (*Id.*) He also maintains it is "nearly impossible" to be a father while in prison because COVID-19 has limited the number and length of visits and visitors are separated from inmates by plexiglass shields and masks. (Def.'s Mot., ECF 534 at 3.)

Wilkerson says he abided by all the rules at FCI Fort Dix and "is in the right mindset to do the right things." (*Id.* at 4.) He has taken "numerous" classes and continued to work towards his GED. (*Id.*) He says he is "done with" the behavior that landed him in prison and will be better able to continue with his rehabilitation if he is released to home confinement. (Def.'s Reply, ECF 548 at 2.)

II

A district court may reduce an inmate's sentence as a form of compassionate release only if it finds that (1) extraordinary and compelling reasons warrant such a reduction; (2) the sentencing factors set forth in § 3553(a), to the extent they are applicable, warrant a reduction; and (3) the reduction is consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). Relevant § 3553(a) factors a court must consider include the nature and circumstances of the offense, the history and characteristics of the defendant, and the "need for the sentence imposed – to reflect the seriousness of the offense, . . . promote respect for the law, . . . provide just punishment for the offense" and "protect the public from further

3

crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2)(A), (C). The applicable Sentencing Commission policy statement requires a court to determine a defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. 3142(g)" prior to release. U.S.S.G. § 1B1.13.

### III

### A

Wilkerson presents no extraordinary and compelling reasons for a reduction of his sentence. He complains about reduced access to rehabilitation programming and recreational activity. But these restrictions are the result of safety measures meant to prevent or reduce the spread of COVID-19 and protect Wilkerson and the other inmates.

Wilkerson's desire to care for his mother because of her significant medical conditions does not justify releasing him from jail. The need to care for elderly or ill parents is not something, on its own, that rises to the level of extraordinary and compelling circumstance warranting release. *See United States v. Fanelli*, 18-543, 2022 WL 2440793, at *8 (E.D. Pa. July 5, 2022); *United States v. Moore*, No. 14-209-2, 2020 WL 7024245, at *5 (E.D. Pa. Nov. 30, 2020); *see also United States v. Ingram*, No. 14-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all, inmates have aging and sick parents. Such circumstance is not extraordinary.") Moreover, Wilkerson has not shown he is the only person able to assist her. *See United States v. Ellsworth-Daway*, No. 17-506, 2021 WL 2823081, at *3 (E.D. Pa. July 7, 2021) (finding there was no extraordinary circumstance requiring compassionate relief without evidence the defendant alone could care for his ailing mother).

Wilkerson's complaints about the difficulties he faces in parenting his son while

incarcerated are, as the Government says, "not extraordinary; they are indeed ordinary." (Gov't Resp., ECF 538 at 8.) A multitude of inmates face the same challenges. Ultimately, the difficulties that Wilkerson's confinement have imposed on his child are the "result of his own criminal activity." *United States v. Adens*, No. 12-616-2, 2022 WL 1226965, at *4 (E.D. Pa. Apr. 26, 2022).

Finally, Wilkerson's efforts at rehabilitation, while commendable, are not enough to establish extraordinary and compelling circumstances. *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.).

B

Even if Wilkerson did present extraordinary and compelling reasons, release would not be warranted based on the § 3553(a) factors. *See United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (affirming denial of compassionate release for at-risk inmate because "the § 3553(a) factors weigh[ed]" against release). The Court imposed Wilkerson's sentence because of his role in a conspiracy that brought blight and danger to the community where he and his co-conspirators distributed crack and heroin like pizza, all while facilitating their customers' destructive addictions.

Also not to be overlooked is Wilkerson's past record of arrests for controlled substance violations, failed compliance with imposed terms of supervised release and repeated flight from law enforcement. (Gov't Resp., ECF 538 at 12-13.) None of Wilkerson's previous interactions with the justice system deterred him from using the 4400 phone to distribute addictive and dangerous narcotics. To release him now – when more than half of his sentence still lies ahead – would overlook the nature, circumstances and seriousness of his offenses, his history and characteristics and would

5

fail to promote respect for the law or provide just punishment.  *See* 18 U.S.C. § 3553(a).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
